## BENEDICT CRAMER *et al. versus* JAMES P. FLINT *et al.* and Trustee.

A policy of insurance on a quantity of sugar belonging to F. was made payable to W. of London, as collateral security for advances made thereon by W. A loss having occurred, and having been paid to his agent in Boston, it was *held*, that the agent was accountable to his principal only, and not to F., for any money received by him under this policy, and consequently could not be charged therefor under the trustee process, as trustee of F.

THE answer of Henry F Baker, the trustee, set forth, that just before the service of the writ upon him, he received, as the agent of Thomas Wilson & Co. of London, and on their account, a certain sum of money, by virtue of a policy of insurance belonging and payable to them ; that he was not accountable therefor to any other person than his principals, and that the defendants had not and could not have any claim against him therefor ; that he had received a letter from his principals, intimating to him the propriety of paying over the whole of such money to D. & A. Jackson, of Plymouth, the owners of the brig Cybele, upon the cargo of which vessel the policy was written ; that he was about to have paid the same to them ; but payment was suspended by reason of the service of the plaintiffs' writ upon him as the supposed trustee of the defendants.

The following extract of a letter from Wilson & Co. to the trustee, dated November 6, 1834, was annexed to the answer : " We also hand you the affidavit of Capt. Appling, setting forth the claim of his owners, Messrs. D. & A. Jackson, of Plymouth, for freight on this sugar. After having secured the balance due us, you will of course dispose of any amount that may remain in your hands arising out of the recovery of the average, as may be proper under the circumstances." Also, annexed to the answer was a protest signed by Appling, in which it is stated that D. & A. Jackson had chartered the brig Cybele with the defendants, to be laden at Pernambuco with a cargo of sugars ; and that Wilson & Co. furnished the credits for the purchase of the cargo ; and that the defendants are indebted to the ship-owners in the sum of £ 359 sterling for the amount of deficient freight.

The cause was argued in writing.

*C. G. Loring* and *F. C. Loring*, for ·the plaintiffs. The supposed trustee, as the agent of Wilson & Co., received a sum of money under a policy of insurance effected here on a cargo of sugar belonging to the defendants, but for the pur· chase of which Wilson & Co. had made advances ; and to se-cure such advances the cargo was consigned to Wilson & Co., and the policy of insurance made payable to them in case of loss. If Wilson & Co. had directed their agent, to retain the amount of their claim, and to pay over the surplus to the de-fendants, it is clear that he would be liable to the defendants in an action for money had and received ; Paley on Agency, 311 ; *Freeman* v. *Otis*, 9 Mass. R. 278 ; and it seems to us, that the discretion vested in him by the letter of Wilson & Co. did not vary his liability to the defendants, and would not have availed him as a defence to such a suit, at least while the funds remained in his hands.

The trustee, in fact, did not receive this money from Wil-son & Co., nor was he liable to them for it ; he received it from an insurance company, on a contract upon which Wilson & Co. had merely a lien, as security to the amount of their claim. Any surplus over that belonged to the defendants, and was received by the trustee to their use.

It will be contended, that the trustee, being an agent, is re-sponsible to his principals alone, and that there was no privity between him and the defendants and therefore no accountabili-ty. Admitting the correctness of the general rule, that an agent is responsible to his principal only, there are exceptions to it. An agent who has received money from his principal to pay to a third person, is liable to the latter in an action for money had and received. Paley on Agency, 311 ; *Freeman* v. *Otis*, 9 Mass. R. 278. These authorities seem in point, especially if, as we contend, the trustee could not exonerate his principals by any other payment, than one made to or with the consent of the defendants.

Further, agents are personally liable, where money has been paid to them for the use of the principal under such circum-stances that the party paying it might recover it back from the principal. Paley on Agency, 305. So, where an agent has

Cramer
*v.*
Flint & Tr.

received money to which his principal has no right, and notice is given him not to pay it over, an action may be supported against him ; and if the agent, at the time when the money is received, knows that his principal is not entitled to it, this is equivalent to notice. 2 Livermore on Agency, 261. Before the money was received by the trustee in the present case, he had instructions from his principals, that the whole of it did not belong to them, and he also knew, that the defendants were the real owners of the property insured, and that the insurance was made by them.

*Bartlett*, for the trustee, contended that nothing short of a clear direction from Wilson & Co. to pay over the money to the defendants, would have enabled them to maintain assumpsit against the trustee ; *Williams* v. *Everett*, 14 East, 582 ; *Wells* v. *Green*, 8 Mass. R. 504 ; and that the courts refuse to charge an agent as trustee, not because it cannot be known that the principal may not he injuriously affected, but because there is no indebtment or contract as between the agent and the defendant : *Chealy* v. *Brewer*, 7 Mass. R. 259 ; *Maine F. & M. Ins. Co.* v. *Weeks*, 7 Mass. R. 438.

*July 2d.*      SHAW C. J. delivered the opinion of the Court. This question must be decided on the trustee's answers, and in order to charge him, it must appear that he had goods, effects or credits.

It seems, under the circumstances of the present case, as disclosed by the answers, to be wholly immaterial, whether the Jacksons had any claim upon Wilson & Co. or not ; the single question is, whether the trustee was *indebted* to Flint & Co., at the time of the attachment, so that they could have maintained an action against him. The Court are of opinion that they could not.

Baker was responsible to Wilson & Co. for the money in his hands, he received as theirs by their order, and in pursuance of a claim of theirs on the insurance company, admitted by them to be valid. Supposing, as is assumed in the argument, that the policy was on property of which Flint & Co. were the general owners, but payable on the face of it to Wilson & Co. in case of loss, and supposing it was intended, as between Flint & Co. and Wilson & Co., to stand as collateral

security only, still, as between the insurance company and Wilson & Co., by force of the contract, the whole amount was payable to the latter. They, on receipt of the money, would become accountable to Flint & Co., and the claim of Flint & Co. for any surplus, was upon them alone. This is in effect in the nature of a lien upon a contract or chose in action, an authority coupled with an interest. It is an authority to collect the debt and to appropriate it to a specific demand, or a general balance. It is very clear, that before the payment, the insurance company were under no obligation to Flint & Co. for the whole or any part of the money payable ; nor could they have discharged themselves by undertaking to apportion the money, and by paying to Wilson & Co. the amount of their balance. When, therefore, it is said, that Wilson & Co. had only a lien on the money, and that the residue was the property of Flint & Co., the term must be understood as used not with legal strictness, but that they had a claim in nature of lien. Indeed, it is not contended that the company were not bound to pay the whole amount to Wilson & Co. The trustee, Baker, was a mere agent to receive the money for Wilson & Co., and a payment to him was in legal effect a payment to them. He had no authority to receive, and did not profess to receive the money, in whole or in part, for the principal defendants.

If he was not responsible on the first receipt of the money, did any thing subsequently occur to render him responsible ? Suppose Baker, as a general agent of Wilson & Co., had full authority to adjust and settle all accounts of his principal with Flint & Co., and pay over the surplus to them, if on such settlement there was any, still he would not, upon such settlement, become personally liable to an action, till by some act of his own he had made himself responsible. Had he paid them, the payment would have been the act of Wilson & Co., and not his own. The authority might have been countermanded

That an agent may be sometimes responsible in his own capacity, there is no doubt ; as where he has received money under specific directions to pay it over to a particular person, for his use, he tacitly undertakes so to do, and is bound by

Cramer
*v.*
Flint & Tr

common principles of good faith to do so ; or where he has received money for his principal, by mistake, that is, money which his principal had no just right to receive, if before he has paid over the money, he has notice of the mistake, he is personally bound to refund. But these principles do not apply. The trustee had received no orders ever to pay over the money to Flint & Co. ; on the contrary, so far as he had any intimation, it was to make a different appropriation, namely, to the Jacksons ; but at all events he was to exercise his judgment, and act with sole reference to the duty and the interests of his principals. Whether Baker would have acted within the scope of his authority or not, in paying the money to the Jacksons, or whether he would have been liable to Wilson & Co., as for a misapplication of their funds, seems not material ; the sole legal remedy of Flint & Co. was on Wilson & Co., and not on Baker.

It was contended, that as Wilson & Co. claimed only a certain amount of the money in Baker's hands, he must be responsible to Flint & Co. for the surplus, as the general owners of the property in respect to which the insurance was recovered. But it appears to us, that this view of the case does not vary the result. Wilson & Co. never disclaimed their legal right to the money. They stated, in their account and letters, what would be due to them to satisfy their balance, and they authorized Baker, in their behalf to dispose of the surplus, as should be proper, that is, according to his views of their duties and responsibilities. But such an authority unexecuted, did not make Baker a debtor either to Flint & Co. or the Jacksons. As between him and his principals, he was to see that the funds were applied as Wilson & Co. were bound to apply them, so that they might be secure. The money was originally received from the insurance company as the money of Wilson & Co. solely, the trustee was accountable to them only, and nothing occurred afterwards to create a legal liability to Flint & Co., and therefore he was not their debtor, and the moneys in his hands were not liable to be attached by the trustee process, as their property.

*Trustee discharged.*